# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**479**

**CA 14-01989**

PRESENT: SMITH, J.P., CARNI, LINDLEY, SCONIERS, AND DEJOSEPH, JJ.

---

CHARLES T. SITRIN HEALTH CARE CENTER, INC.,
PETITIONER-RESPONDENT-APPELLANT,

V                                    MEMORANDUM AND ORDER

COMMISSIONER OF HEALTH OF STATE OF NEW YORK
AND DIRECTOR OF BUDGET OF STATE OF NEW YORK,
RESPONDENTS-APPELLANTS-RESPONDENTS.

---

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (VICTOR PALADINO OF COUNSEL), FOR RESPONDENTS-APPELLANTS-RESPONDENTS.

BOND, SCHOENECK & KING, PLLC, ALBANY (RAUL A. TABORA, JR., OF COUNSEL), FOR PETITIONER-RESPONDENT-APPELLANT.

---

Appeal and cross appeal from a judgment (denominated order and judgment) of the Supreme Court, Oneida County (Samuel D. Hester, J.), entered March 19, 2014 in a proceeding pursuant to CPLR article 78. The judgment granted the petition in part.

It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by granting the petition in its entirety, and as modified the judgment is affirmed without costs.

Memorandum: Petitioner commenced this CPLR article 78 proceeding seeking, inter alia, the annulment of a determination of respondents, made February 25, 2013, that retrospectively revised the capital cost component of petitioner's Medicaid reimbursement rate for the period beginning on September 1, 2009. Respondents appeal and petitioner cross-appeals from a judgment granting the petition in part and annulling that part of respondents' determination that revised the reimbursement rates for the period from September 1, 2009 through September 30, 2011. We conclude that Supreme Court also should have annulled respondents' determination for the period from October 1, 2011 through March 27, 2013, and we therefore modify the judgment accordingly.

Medicaid reimbursement rates for diagnostic and treatment centers such as petitioner are comprised of an operating cost component and a capital cost component (see Public Health Law § 2807 [2] [b]). In 2008, the legislature revised the methodology for calculating the reimbursement rate (see § 2807 [2-a], as amended by L 2008, ch 58, § 1, part C, § 18). Under the new methodology, the operating cost component of the reimbursement rate would be calculated using "the

ambulatory patient group (APG) methodology" (§ 2807 [2-a] [e] [i]), which would be phased-in gradually during an implementation period running from September 1, 2009 though January 1, 2012 (*see* § 2807 [2-a] [b] [i]-[iv]). Section 2807 (2-a) did not impose a new methodology for calculating the capital cost component of the reimbursement rate and simply provided that "such rates . . . shall . . . remain subject to the provisions of paragraph (b) of subdivision two of this section" (§ 2807 [2-a] [h] [ii]).

Under Public Health Law § 2807 (2) (b), the capital cost component of the reimbursement rate is "determined by adjusting the [capital] cost data of each facility for a base year" (*Anthony L. Jordan Health Corp. v Axelrod*, 67 NY2d 935, 936), and "[t]he base year for the rate period commencing on October [1, 1994] shall be [1992] and shall be advanced one year thereafter for each subsequent rate period" (§ 2807 [2] [b]). The legislature adopted legislation, however, that modified the effect of section 2807 (2) (b) by freezing the capital cost component of the reimbursement rates such that the "rates of payment for diagnostic and treatment centers established in accordance with paragraph[] (b) . . . of subdivision 2 of section 2807 of the public health law for the period ending September 30, 1995 shall continue in effect . . . through September 30, 2011" (L 2009, ch 58, § 1, part B, § 22). Thus, although section 2807 (2) (b) provides that the capital cost component of the reimbursement rate is recalculated annually by making an adjustment to the rate applicable to a base year that is two years prior to the rate year, the rate freeze legislation provides that the capital cost component would remain at the 1995 level through September 30, 2011.

On February 25, 2013, respondents notified petitioner that they were retrospectively revising the capital cost component of the reimbursement rate for the period beginning on September 1, 2009 by using a base year that was two years prior to the rate year. The court agreed with petitioner, however, that the legislature had frozen the reimbursement rates for the period from September 1, 2009 through September 30, 2011 at the 1995 level.

On appeal, respondents contend that the rate freeze legislation was not applicable during the period from September 1, 2009 through September 30, 2011 because it had been rendered inoperable when the legislature adopted Public Health Law § 2807 (2-a). We reject that contention. "The primary consideration of courts in interpreting a statute is to 'ascertain and give effect to the intention of the Legislature' " (*Riley v County of Broome*, 95 NY2d 455, 463, quoting McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a], at 177). "The statutory text is the clearest indicator of legislative intent[,] and courts should construe unambiguous language to give effect to its plain meaning . . . And where, as here, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency" (*Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [internal quotation marks omitted]). Here, section 2807 (2-a) (h) (ii) provides that the capital cost component of the reimbursement rate is to be

calculated in accordance with section 2807 (2) (b), and the legislature also enacted a law that unambiguously provides that reimbursement rates calculated in accordance with section 2807 (2) (b) shall remain at the 1995 level through September 30, 2011 (*see* L 2009, ch 58, § 1, part B, § 22). Nothing in section 2807 (2-a) implies that the legislation freezing the capital cost component of the reimbursement rate was not operable after September 1, 2009, and we therefore conclude that respondents' determination to the contrary "runs counter to the clear wording of [the] statutory provision[s and] should not be accorded any weight" (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459).

On cross appeal, petitioner contends that it was entitled to 30 days' notice of any change to the capital cost component of the reimbursement rate, and we agree. The Public Health Law provides that "the commissioner shall notify each diagnostic and treatment center of its approved rates of payment . . . at least thirty days prior to the beginning of the period for which such rates are to become effective" (§ 2807 [7-b] [a]). Although the legislature suspended the advance notice requirements for the purpose of implementing section 2807 (2-a) (*see* L 2010, ch 58, § 1, part B, § 49; L 2010, ch 109, § 1, part B, § 29), we conclude that the change to the reimbursement rate for the period beginning on October 1, 2011 is attributable to the expiration of the rate freeze legislation by its own terms on that date (*see* L 2009, ch 58, § 1, part B, § 22), and is not related to the implementation of section 2807 (2-a). The court therefore should have extended the annulment of respondents' determination through March 27, 2013, which is 30 days after the date of respondents' determination made February 25, 2013 (*see* § 2807 [7-b] [a]; *see generally Anthony L. Jordan Health Corp.*, 67 NY2d at 936).

In light of our determination, we do not address petitioner's remaining contentions on its cross appeal.

Frances E. Cafarell

Entered: June 19, 2015

Clerk of the Court